UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIMINAL NO. 18-CR-10178-IT |
| NICHOLAS ZUCKERMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Nicholas Zuckerman pled guilty pursuant to a written plea agreement[1] to the above-docketed indictment, which charges him with two counts of transmitting threats in interstate and foreign commerce, in violation of 18 U.S.C. § 875(c). For the reasons discussed in greater detail below, the government respectfully requests that this Court impose a Guideline sentence that includes a term of incarceration of 18 months and a term of supervised release of 36 months.

**FACTS**

The Harvard Black Commencement of 2017 was planned for May 23, 2017, as a celebratory event to honor the accomplishments of graduating black students. Harvard did not formally advertise the event, but the individual graduate schools advertised for students to register their anticipated participation and the event garnered considerable advance media attention. The defendant, Nicholas Zuckerman, was one specific member of the public who became aware of the event, and his reaction to it is what brings us here today.

---

[1] Following the defendant's change of plea, the Court deferred acceptance of the plea agreement, which was executed and submitted pursuant to Rule 11(c)(1)(C).

On or about May 11, 2017, a post was published to Harvard University's public Instagram account, which included a description of a visit to the school by Misty Copeland, a famous African-American ballerina, and a photograph of her greeting two young black females.[2]

Just two days later, the defendant – utilizing an Instagram account with the username russian_goalkeeper94 – uploaded a threatening comment to the post, which read:

> If the blacks only ceremony happens, then I encourage violence and death at it. I'm thinking two automatics with extendo clips. Just so no n***** gets away.

That same day, the defendant posted a threatening comment in response to a May 12, 2017 Harvard Instagram post that included a photograph of the American flag flying above the John Harvard statue in Harvard yard. The defendant's post read:

> #bombharvard and end their pro-black agenda

Beginning approximately 10 minutes later, the defendant uploaded the threatening comment "#bombharvard" to other users' posts approximately 11 times, over a span of about four minutes.

Someone who had seen the defendant's comments to the Harvard posts reported them to the Harvard University Police (HUPD). Through subsequent investigation, HUPD and the FBI identified the defendant as the user of the russian_goalkeeper94 account.

---

[2] The text accompanying this picture reads:

> In a visit to Harvard, Misty Copeland (@mistyonpointe) shared her experience as a ballerina at the American Ballet Theatre and talked about positive body image and self-care. "It's about the journey and enjoying and loving the body you're in now and enjoying the process of getting to wherever you want to go," she said.
>
> Copeland spent her youth in southern California, where she lived on welfare with a single mother and five siblings, and little access to organized sports or the arts. Her introduction to ballet in the form of a Boys and Girls Club class was an awakening for this self-described introvert. #Harvard #dance #ballet

After ensuring that the defendant was not in the Cambridge area in the days leading up to the event, and also helping to coordinate a heightened law enforcement presence at the May 23rd Black Commencement, the FBI did not see him at the ceremony and does not believe that he was there. Despite the defendant's threats, the ceremony was executed as it was intended – to mark the accomplishments of the black community at Harvard in a safe and celebratory environment.

The FBI ultimately tracked the defendant down in Phoenix, Arizona, and interviewed him in his home on November 15, 2017.[3] The defendant initially claimed lack of memory about posting the threats and speculated that they might be the result of someone hacking his account. But the defendant ultimately admitted to knowingly and intentionally posting the threats, knowing and intending that they would be taken as threats. The defendant intentionally selected the victims as objects of his threats because of the actual and perceived race and color of certain students at Harvard University.

## DISCUSSION

### I. Sentencing Guideline Calculation

Based on its computation of the defendant's total offense level as 13 and his criminal history category as I, the United States Probation Office ("Probation") has computed a Guideline sentence in this case to include a term of incarceration from 12 months to 18 months; the Guideline range of supervised release is one to three years.

---

[3] The FBI had considerable difficulty in locating the defendant. In the days leading up to the Black Commencement, the defendant told law enforcement over the phone that he was in California, but made inconsistent statements about how long it would take him to return to his home state of Arizona. He then hung up, and thereafter shut off his phone for good. This prevented the FBI from determining his location via his cellphone. Months later, his father assisted the FBI in arranging a noncustodial interview of the defendant at the Phoenix address where he had been residing.

The government agrees with Probation's calculation of the defendant's Offense Level and Criminal History Category (PSR ¶¶ 19-40), and thus agrees with its determination of his Guideline sentencing range (GSR) as outlined above. The written plea agreement sets forth the same calculation. [Doc. 31, ¶ 4].

**II. Application of the Section 3553(a) Factors**

The punishment recommended by the government reasonably fits the crimes to which the defendant has pled guilty. Based on an evaluation of all of the § 3553(a) factors, this Court should impose a high-end Guideline sentence, which, in this case, is 18 months.

**A. Nature and Circumstance of the Offense and History and Characteristics of the Defendant**

A threat is a serious offense. It is a crime of violence. In this case, the defendant made his threats in order to provoke a reaction, and he succeeded: members of the public were concerned, they contacted law enforcement, and law enforcement agencies spent significant resources (not the least of which is time) investigating him. This diversion of law enforcement and other authorities to evaluate whether the threatened violence will turn into the actual physical, in-person terror that the defendant encouraged may be seen as a secondary injury resulting from the defendant's crimes. The fear engendered by these threats is, of course, the primary injury suffered by the defendant's victims. Here, such fear was both reasonable and foreseeable, where the defendant made specific threats of violence against a specific group at a specific place at a specific time.

Compounding the seriousness of the defendant's threats are two other factors. First, he targeted an entire group of people, not specific individuals. In other words, he wanted to scare not just one or two people, but whole groups. Second, he targeted not just any group, but rather a minority group defined by cultural, ethnic, and racial ties. The Black Commencement was designed to "bring together black students from all parts of the University to celebrate their

4

accomplishments, acknowledge the challenges faced by students of color on a historically white-dominated campus, and foster a sense of support and belonging." The Crimson Editorial Board, *Defending Black Commencement*, The Harvard Crimson, March 12, 2019, available at https://www.thecrimson.com/article/2019/3/12/editorial-defending-black-commencement/ (last accessed July 10, 2019). The defendant's hate-fueled threats were designed to undermine the very purpose of that celebration.

It is clear that the defendant acted with purpose and deliberation. He did not, for example, post his violent, vulgar, hate-filled comments on his *own* Instagram account; rather, he responded to posts on *Harvard's* account. He took steps to find the posts, which were general public celebrations of the history and culture at Harvard,[4] to read through the comments to identify others who disapproved of the Black Commencement, and to engage with them, taking the discourse to a level beyond "discussion" or "free speech" to a place of violence and fear.

While the defendant was ultimately apprehended in Arizona and apparently had not made any plans to travel to Harvard himself, his threats were no less powerful than if he had. "The threats from Zuckerman indisputably engender terror among those targeted. We must not shy away from labelling this threat for what it is: an act of terror. Threats like these can bring out others who have similar toxic beliefs, and risk normalizing racist views. Zuckerman may not have executed his threats, but the very nature of a threat gives it destructive power nevertheless." The Crimson Editorial Board, *Defending Black Commencement*, The Harvard Crimson, March 12,

---

[4] As mentioned, one post included a description of a visit to the school by Misty Copeland, a famous African-American ballerina, and a photograph of her greeting two young black females; the other included a photograph of the American flag flying above the John Harvard statue in Harvard yard.

2019, available at https://www.thecrimson.com/article/2019/3/12/editorial-defending-black-commencement/ (last accessed July 10, 2019).

The defendant's violent public persona is not limited to the hate crimes charged in the indictment. As outlined in the PSR [¶ 14], in the months leading up to the charged crimes, the defendant repeatedly issued calls to violence on Instagram, including sexual violence, race-motivated violence, politically-motivated violence, and mass violence.

### B. Respect for the Law, Just Punishment, Adequate Deterrence, and Protection of the Public

The government recognizes that it may be difficult to quantify "how much time" is "enough" to adequately punish the defendant, deter similar criminal conduct, and protect the public. This Court can be confident, however, that the sentence recommended by the government is both reasonable and necessary to accomplish those goals.

The government understands that there is considerable debate about the extent to which a criminal sentence actually deters members of the public from committing similar crimes out of fear of similar punishment. General deterrence through sentencing might be uncertain. But general *encouragement* through minimal punishment is predictable.

That is especially true in this context, where the defendant perpetrated his crime from behind a computer screen. Online discourse has simultaneously deteriorated in quality and made it easier to broadcast threats, and threats made online suffer from network effects. That is, when someone surfing the Internet sees a threat online, he may conclude that the norms of public discourse have changed to allow such discourse free of penalty. This is so because threats posted online condition like-minded (but sometimes less vocal) readers to believe that posting threats will be tolerated, that it is the new normal. The Court must reject the prospect of such a "new normal."

By imposing a substantial sentence here, the Court can promote, even *create*, respect for the law that posting true threats, especially true threats motivated by racial animus, is illegal.

Members of the Harvard community have recognized this value in a strong legal response to the defendant's criminal behavior. "While online threats sometimes go unexamined, we believe that the decisive action of law enforcement in this case constitutes a valuable expression of institutional support for students of color and reaffirms our commitment to a safe community." The Crimson Editorial Board, *Defending Black Commencement*, The Harvard Crimson, March 12, 2019, available at https://www.thecrimson.com/article/2019/3/12/editorial-defending-black-commencement/ (last accessed July 10, 2019). To truly hold the defendant accountable for his actions, this Court must react decisively and unequivocally.

An insubstantial sentence for a serious offense can convey to the public that the law does not matter. This can undermine the public's respect for not just the law that the defendant violated, but also for the legal system in general. It goes without saying, obviously, that nobody should be threatened with violence just because of their (in this case) racial identities. Here, the defendant went a step further, targeting the participants of an event designed to celebrate communities of students from historically marginalized backgrounds who face challenges both on their paths to Harvard and their journeys through it. The seriousness of his transgression must be met with an equally serious sentence. Such a response is especially important given that hate crimes are, generally, on the rise.[5] Public and official rejection of such behavior is necessary if we are to take serious steps towards curtailing it.

---

[5] "Hate crimes reported to police in America's ten largest cities rose 12.5 percent in 2017. The increase was the fourth consecutive annual rise in a row and the highest total in over a decade according to an analysis by the Center for the Study of Hate & Extremism at California State University, San Bernardino." *Report to the Nation: Hate Crimes Rise in U.S. Cities and Counties in Time of Division & Foreign Interference, May 2018*, *Compilation of Official Data*

**CONCLUSION**

The government's recommended sentence is not only reasonable, but necessary in this case to promote respect for the law, to adequately punish the defendant for his criminal conduct, to deter him and others from offending in the same ways again, and for the protection of the public. For all of the foregoing reasons, the government respectfully recommends that this Court impose a sentence of 18 months in prison, a period of three years of supervised release, and the mandatory $200 special assessment. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

Respectfully Submitted,

ANDREW E. LELLING
United States Attorney

Dated: July 11, 2019   By:   */s/ Anne Paruti*
Scott L. Garland
Anne Paruti
Assistant United States Attorneys
One Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

---

*(38 Jurisdictions)*, Center for the Study of Hate & Extremism at California State University, San Bernardino, available at https://csbs.csusb.edu/sites/csusb_csbs/files/2018%20Hate%20Final%20Report%205-14.pdf (last accessed July 10, 2019).

## **CERTIFICATE OF SERVICE**

I, Anne Paruti, hereby certify that the foregoing was filed through the Electronic Court filing system and will be sent electronically to the registered participant as identified on the Notice of Electronic filing:

Date: July 11, 2019  /s/ Anne Paruti_____
Anne Paruti
Assistant United States Attorney